483 A.2d 907

**In the Interest of Derrick JACOBS.**

**Appeal of the COMMONWEALTH of Pennsylvania.**

Superior Court of Pennsylvania.

Submitted June 8, 1984.

Filed Oct. 26, 1984.

614

Eric B. Henson, Deputy District Attorney, Philadelphia, for Commonwealth, appellant.

John Packel, Chief, Appeals, Assistant Public Defender, Philadelphia, for appellee.

Before TAMILIA, JOHNSON and HESTER, JJ.

TAMILIA, Judge:

In this case, the Commonwealth appeals the expungement of a juvenile record in the face of statutory restrictions it alleges were ignored by the court below. Issues raised by this case are:

(1) Whether an increase in the restriction imposed by the legislature on the expungement of a record of a juvenile consent decree, after that decree was entered, serves as an ex post facto increase in penalty.

(2) Whether the court without a hearing, may expunge the record of a petition filed by the Commonwealth, when said petition was refiled after it had been withdrawn without prejudice by the Commonwealth to enable respondent to enter the service, and he failed to do so.

616

We answer both questions in the negative and reverse the court below.

On December 5, 1980, respondent, Derrick Jacobs, age 16, was apprehended inside a Temple University women's dormitory in possession of a seven (7) inch butcher knife, a length of clothes line, and a cloth and wire gag. As a result of this activity a petition was filed in the Juvenile Section, Family Division, Court of Common Pleas of Philadelphia County. Subsequently, pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6340, a consent decree was entered. At the successful completion of the terms of probation, pursuant to the consent decree, the case was closed.

On June 3, 1982, the respondent was found on the premises of the Pepper, Hamilton and Scheetz law firm, in the company of another, without permission of the proprietors, while the premises were closed to the public. By petition dated June 7, 1982, he was charged with Burglary (F), Theft, Receiving Stolen Property, Criminal Trespass (F), and Criminal Conspiracy. Before this petition reached an adjudicatory hearing, it was withdrawn on June 28, 1982 by the Commonwealth, without prejudice, to enable the respondent to enter the service. When the district attorney learned some time later that respondent had not entered the service, that office reinstated the petition and sought an adjudicatory hearing. On January 13, 1983, the Juvenile Section Judge declined to allow such a hearing. Subsequently, on April 11, 1983, a petition for argument and expungement of the record was presented and continued to May 4, 1983, when expungement of the entire juvenile record was granted. This appeal followed.

It is clear that under the Criminal History Record Information Act, 18 Pa.C.S.A. § 9101 et seq. (hereafter called C.H.R.I.A.) expungement of the record was improper unless there was a violation of the ex post facto section of the Federal Constitution, U.S. Constitution, Article I, § 10, or the Pennsylvania Constitution, Article I, § 17.

C.H.R.I.A. provides:

§ 9123 Juvenile Records

(a) Expungement of juvenile records.—... except upon cause shown, expungement of records of juvenile delinquency cases wherever kept or retained shall occur after ten days notice to the district attorney, whenever the court upon its motion or upon the motion of a child or the parents or guardian finds:

(1) a complaint is filed which is not substantiated or the petition which is filed as a result of a complaint is dismissed by the court other than as a result of a consent decree;

(2) five years have elapsed since the final discharge of the person from commitment, placement, probation or any other disposition and referral and since such final discharge, the person has not been convicted of a felony, misdemeanor or adjudicated delinquent and no proceeding is pending seeking such conviction or adjudication; or

(3) the individual is 21 years of age or older and a court orders the expungement.

By express language, a child subject to a consent decree may not have his record expunged unless he meets the tests enumerated in the statute. Here, respondent was free of criminal activity after his case was closed for less than 2 years, assuming he entered upon the consent decree in December 1980. His case was closed six months later in June 1981, and he was subsequently arrested on the second burglary charge in June 1982. A second petition was pending although the court below refused to reschedule a hearing, and respondent had not reached 21 years of age. Thus, none of the requirements of the Act had been met, and as the court below recognized, expungement was reversible error. (T.T. p. 32)

Unquestionably, the lower court was attempting to do a charitable and humane act in regard to the respondent. If respondent had successfully entered the service, the issue would not be before us and the district attorney would have considered this to be an adequate disposition for a young adult who was skirting serious criminal behavior.

The purpose of C.H.R.I.A. is to provide an opportunity for children who crash upon the reef of criminal behavior to leave behind the damaging effect of such collision upon a showing that they had exercised sufficient restraint as to reasonably assure the authorities that total redemption was justified. C.H.R.I.A. gave the delinquent and dependent child something they never before had. Although the intent and promise of the juvenile justice movement in this State and Country since the Act of April 23, 1903, P.L. 274 was declared constitutional in *Commonwealth v. Fisher*, 213 Pa. 48, 62 A. 198 (1905), was to insulate the child from the harshness of the criminal law and to provide treatment and rehabilitation instead of punishment, there was always an elusive stigma attached to an adjudication of delinquency and/or dependency, which the expungement act sought to eliminate. The balance clearly proposed by the legislature was to give the child this additional benefit, but only if deserving, for there is an equal consideration of protection of public safety by having the record of the child available if his chronic behavior and course of conduct presage adult criminal behavior. It has long been the law of Pennsylvania, and other jurisdictions, that juvenile records could be considered during the sentencing of an adult with a prior juvenile record. *See* Pennsylvania Sentencing Guidelines, 42 Pa.C.S.A. § 9721; Consideration of Accused's Juvenile Court Record in Sentencing for Offense Committed as Adult, 64 A.L.R.3d 1291.

Appellee argues that the statute, as it was in effect in 1980, gave respondent a vested right to expunction which cannot be denied by the present law. We cannot agree.

In a similar situation, *Edward M. v. O'Neill*, 291 Pa.Super. 531, 436 A.2d 628 (1981), this Court held the lower court had no right to expunge fingerprint and photographic records of a juvenile even though there was no statutory right to obtain such identification until some time after the arrest of the juveniles. The two juveniles were arrested in March and April, 1979, fingerprinted and photographed the same day. The statute providing express authority permit-

ting fingerprinting and photographing of juveniles (42 Pa.C. S.A. Juvenile Act § 6308(c)) was not enacted until February 29, 1980, effective sixty days thereafter. In the absence of a statutory provision prohibiting police to fingerprint, the court had no right to expunge records, except pursuant to statute, such as was later enacted in the Juvenile Act, *supra*, and C.H.R.I.A., 18 Pa.C.S.A. § 9123(a), Expungement of juvenile records.

■ Expungement, as noted by appellee, is a question of due process. In analyzing the effects of a juvenile consent decree, our Court has compared it with Accelerated Rehabilitative Disposition (A.R.D.) in the adult criminal system. *Commonwealth v. Briley,* 278 Pa.Super. 363, 420 A.2d 582 (1980). Briley held that upon successfully completing an A.R.D. program, "The Commonwealth has the burden of justifying the retention [of arrest records]." *Id.,* 278 Pa.Superior Ct. 370, 420 A.2d at 586. Citing *Briley,* our Supreme Court in *Commonwealth v. Wexler,* 494 Pa. 325, 431 A.2d 877 (1981), used a balancing test in which the Commonwealth was required to establish an overriding interest in retaining the arrest record of a female juvenile who had a single arrest for possession of marijuana, successful completion of the consent decree probation, no further criminal involvement for four years, and current employment as a cashier after reaching her 18th birthday. There the Commonwealth could not meet that burden. *Accord, Commonwealth v. Chacker,* 320 Pa.Super. 402, 467 A.2d 386 (1983). In *O'Neill, supra,* the court held that a balancing test, as applied to a juvenile who had been adjudicated delinquent, would support the Commonwealth's overriding interest in retaining the records. In *Commonwealth v. Rose,* 263 Pa.Super. 349, 351, 397 A.2d 1243, 1244 (1979), this Court, relying on *Commonwealth v. Malone,* 244 Pa.Super. 62, 366 A.2d 584 (1976), stated:

The judicial remedy of expunction is an adjunct to the inherent rights of Due Process and is not dependent on express statutory authority. However, expunction is proper only in cases where acquittal is consistent with a

finding of real innocence and is not a result of legal technicalities unrelated to questions of guilt or innocence. In *Wexler, supra,* the Supreme Court held:

> ... [I]f the Commonwealth *does* not bear its burden of proof beyond a reasonable doubt, or admits that it is *unable* to bear its burden of proof, the Commonwealth must bear the burden of justifying why the arrest record should not be expunged. (Citations omitted) (Emphasis in original)

*Id.,* 494 Pa. at 331, 431 A.2d at 880. *Commonwealth v. Chacker, supra,* 320 Pa.Superior Ct., footnote 2, p. 409, 467 A.2d, footnote 2, p. 390, adopts this reasoning. Thus, in keeping with *Malone, Wexler* and *Chacker,* where the Commonwealth has established a prima facie case and, as here, goes on to show conditional release of the defendant, the violent and threatening aspects of the crime, and subsequent arrest within a short time thereafter, it has carried its burden of proving a substantial interest in retaining the records.[1]

■ *Briley, supra,* extended an exception to A.R.D. cases because the district attorney provided close preliminary scrutiny to such cases, and the effect of A.R.D. completion was akin to acquittal by a jury. By analogy the same consideration has been applied to consent decrees although there is a distinction between the two in that the court can

---

1. *Chacker* also specifically overrules *Commonwealth v. Mueller,* 258 Pa.Super. 219, 392 A.2d 763 (1978), on the basis of the above language in *Wexler.* We would note that in commenting on *Mueller,* the *Chacker* court relied on *Wexler* as *sub silentio* ruling out any affirmative burden on the defendant to show by compelling evidence, justification for expungement of the arrest record, if the Commonwealth has established a prima facie case. *Mueller* held that where the Commonwealth has established a prima facie case of guilt on the part of the accused, he will then have the burden to affirmatively demonstrate nonculpability, otherwise his petition to expunge will be denied. *Mueller,* 258 Pa.Superior Ct. at 223, 392 A.2d at 765. We would offer a note of caution, in that in *Mueller,* the Commonwealth had a strong case, which was dismissed only because of a technical rule 1100 problem, whereas in *Wexler,* the Commonwealth had a weak case and nolle prossed it because it believed it could not establish its proof beyond a reasonable doubt. *Wexler* was silent as to whether a mere technical violation, resulting in dismissal, should receive the same treatment as the matter there at issue, which was a dismissal because of failure of proof beyond a reasonable doubt. Since *Mueller* was cited by the Court in *Wexler,* and not specifically overruled, contrary to the holding in *Chacker,* the two circumstances detailed above, which trigger the Commonwealth's burden of proof, may require different consideration.

direct a consent decree be entered in relation to a juvenile respondent, whereas, the court is powerless to order A.R.D. if opposed by the district attorney. *Commonwealth v. Boerner*, 268 Pa.Super. 168, 407 A.2d 883 (1979) appeal dismissed, 491 Pa. 416, 421 A.2d 206 (1980); *Commonwealth v. Kindness*, 247 Pa.Super. 99, 371 A.2d 1346 (1977).

■ As to the present respondent, assuming we accept the argument of appellee, that we must deal with him in the context of the statute as it was written at the time of his arrest, 18 Pa.C.S.A. § 9123(a) provided that an expungement of juvenile arrest and court records shall be ordered *unless* upon cause shown to the contrary. *In the Interest of John W*, 300 Pa.Super. 293, 298, 446 A.2d 621, 624 (1982). Here we believe the district attorney has clearly established cause to prevent expunction because of the serious nature of respondent's behavior, as detailed in the facts on the record, including the second arrest within less than two years on burglary and related offenses.

■ As to the ex post facto argument, appellee must likewise fail. In the Act of 1979, July 16, P.L. 116, No. 47, § 2, effective January 1, 1980, 18 Pa.C.S.A. § 9123(a)(1) provided expunction could be ordered when the court finds: "a complaint is filed which is not substantiated or the petition which is filed as a result of a complaint is dismissed by the court other than as a result of *an informal adjustment.*" [Emphasis added.] Recognizing its error in treating a non formal proceeding (informal adjustment) as one requiring serious consideration when it failed to recognize the more structured custodial approach indicated by the consent decree, the legislature within 7 days of the filing of *In the Interest of John W.*, by amendment of 1982, June 11, P.L. 476, No. 138, § 4, effective in 180 days, at the end of paragraph (1) of subsection (a), substituted "a consent decree" for "an informal adjustment." The legislature, by its action, interchanged the two proceedings and where informal adjustment was formerly regulated by statute and was treated in the same fashion as an adjudication, consent decrees under the 1982 amendment fell into that class. In

either case, as discussed above, a consent decree under the facts of this case, cannot be expunged, where, as here, the Commonwealth has established cause to prevent expunction. Appellee's argument, that the 1982 C.H.R.I.A. amendment cannot apply to respondent, must fail because *In the Interest of John W.*, *supra* held that a law cannot be considered to be ex post facto in effect unless it alters the respondent's position to his disadvantage. By applying C.H.R.I.A., respondent could not have his record expunged and by applying the standards in effect before C.H.R.I.A., the Commonwealth established cause to prevent expungement.

■ As to the expungement of the second petition, this too is impermissible as the Commonwealth had the right to reinstate the second petition charging burglary, and the court could not expunge this petition without a finding, pursuant to C.H.R.I.A., that the petition was unsubstantiated. (18 Pa.C.S.A. § 9123(a)(1)). This the court failed to do.

Order of expungement is vacated.

Jurisdiction relinquished.

JOHNSON J., filed a concurring opinion.

JOHNSON, Judge, concurring:

I join in the majority's disposition of this case. Nevertheless, I think it necessary to clarify one point.

Prior to the passage of the Criminal History Records Information Act, 18 Pa.C.S. § 9101 et seq. (CHRIA), the remedy of expungement was held to exist as an adjunct of due process. *Commonwealth v. Malone*, 244 Pa.Super. 62, 366 A.2d 584 (1976). However, as stated by the majority, expungements under due process have been held to be limited to those cases where an acquittal is consistent with a finding of real innocence and is not a result of legal technicalities unrelated to questions of guilt or innocence. *Edward M. v. O'Neill*, 291 Pa.Super. 531, 436 A.2d 628 (1981).

Subsequent to the *Malone* decision, CHRIA was enacted. The relevant sections of this Act are set forth in the

majority opinion and it is not necessary to repeat those provisions here. It is sufficient to state that, insofar as juvenile records are at issue, an individual can get his or her record expunged, except upon cause shown, if certain conditions set forth in the statute are met.

It should be observed, however, that the expungement remedies allowed under CHRIA are in addition to those already extant under due process. *See Interest of Lowe,* 302 Pa.Super. 271, 274 n. 4, 448 A.2d 632, 633 n. 4 (1982); *Edward M. v. O'Neill,* 291 Pa.Super. at 544, 436 A.2d at 634. As noted in these two cases, it is possible that an individual may fail to meet the requirements under one type of expungement procedure yet may satisfy the requirements of the other.

I do not, with this opinion, express a view regarding appellee's possibilities of obtaining expungement under due process. My intent is only to highlight the difference between expungement cases under due process and under CHRIA.